Please proceed. Thank you, Your Honor. My name is Daniel Capton. I represent the appellant, Darren Quesada. I'll be watching the clock and trying to save about two minutes of my apology. This is the Secret Forum Act. To be clear, I said rehabilitation is not for the proper purposes of any prison sentence. The Supreme Court's opinion in Tokyo emphatically confirms that that provision means what it says. A judge may not either impose or determine the length of a prison sentence for the purpose of enabling rehabilitation in prison. When you look at what the judge said, I get your point that there was an oblique reference that you're drawing out. But when you look at the totality of what he said, it does not appear that that was the, if you will, the nexus for what he did. What wording do you want us to focus on to make your point? Well, the first thing I would point to is the so-called smoking gun. One of the clearest statements from the judge was the statement that's on page 390, where the judge said, we can impose treatment for sex abuse, referring to the defense counsel who said, I don't know if prison will necessarily address someone who has an addiction. And then just after that, the court says, we can impose treatment for sex abuse, treatment that, again, one can mostly disregard. But we can make the circumstances a lot more conducive to actually participating and benefiting in sex offender treatment, plus the substance abuse. I think I understand your point. I read it carefully. But at the appellate level, we have standards of review and how often a case is decided based upon a standard of review. I hear there was no objection made at the trial level. And so we have to find plain error, not just error, but plain error. How would you argue there was plain error from that general statement? Let me just first briefly say I maintain that line from the defense counsel, it's 390, lines 15 to 17, where the defense counsel said, I don't know if prison will necessarily address someone who has an addiction. That is capturing the gist of the Supreme Court's opinion. However, the summary is plain error. It's an objection. It's an objection. How would you argue it? Well, on remand, the Supreme Court at Tupia, as you guys said, we're going to not reach the question of the absence of an objection and what effect that is. Well, at the Ninth Circuit, the remand, the Ninth Circuit in Tupia itself said, this is plain error. Tupia, error under Tupia is plain error. And the analysis was it was clear that it was error. It was clear that the error was plain. It affected substantial rights because even though it wasn't the only justification the judge expressed for that sentence, the judge also said deterrence was a factor. There was a reasonable probability that it could have had some effect on the sentence because it was one of the factors. And then finally, the court said that in a situation where a person may be spending time in prison because of an error by the court, because of a plain error by the court, and not because of what the person did, that forthcoming plain error is routinely, including in Tupia, deemed satisfactory. Don't we, though, have to read the language that you quoted as being the judge's express statement that he was, in fact, imposing the sentence he was in order to get that relief? Don't we have to read it that way in order for your argument to have any teeth? Well, I would say no because in Tupia, the Supreme Court was not completely emphatic or, let's say, definitive. The Supreme Court said it appears from the record that the judge may have made this a factor. There was language to the gist of may have. I concede that the court's statements in Tupia itself were more explicit than the statements here. However, this one statement on 390 is fairly explicit, and I would point the court to the surrounding content. If you go to pages earlier, at the beginning of that first phase of the disposition hearing, the prosecutor tells the judge three times, on page 388 and 389, to impose a sentence that will give Mr. Quesada time to get treatment in prison. First, it's 388, lines 18 to 19. The prosecutor seems to me he might be better off receiving that treatment in prison. Then the court interjects that, at a statutory maximum of 60 months, the prosecutor responds with a blob of 388. Correct? So I believe that would give the opportunity for him to do enough time in prison to complete such a program. A few lines down, line 5 on 389, it may be he gets treatment while he's inside of prison, but we still have some time to work with. Then it's the page 4 of what we were just talking about. Is there ever any discussion of the length of the program? No, I mean, 22. So there's no indication of the duration of the sentence. It's driven by how long it would take to complete the program. A few pages later, the judge says, he's looking at 60 months, he wants to throw the book at this guy, and then adjourns and comes back two weeks later and gives a lesser sentence. And when they come back two weeks later, is there any discussion of treatment? Yes. So that's another part of the context. The judge adjourns the sentence, and the initial disposition report had come before the first base, and the probation officer in the initial report did not say anything about getting treatment in prison and recommended a nine-month sentence. Then the judge adjourns the hearing and says, let's take a vote. For reasons that are not clear on the record, during that interim period, the probation officer issues a new disposition report, which recommends a three-year sentence. The ad specifically says, this will give time to do treatment in prison. Then the hearing recommences, and at that point the prosecutor, again, refers to the idea of getting treatment in prison. Page 407. Sorry, I got it wrong. 21. I know we're not giving him a prison sentence to do counseling in prison, but it gives him the opportunity to do that, and it gives him the opportunity to do that in an environment where he is not likely to be tempted by alcohol so that he can actually get serious about his sobriety, et cetera. So the prosecutor there is starting out saying, we're not doing this, but then goes on to say, let's do this, and they say, let's do this. This guy can always successfully get treatment in prison. What does the court say? Right after that, the court just turns to defense counsel and says, Mr. Williams, Mr. Williams, defense counsel, please make some comments. Is there any indication that the sentence is driven, the sentence imposed by the court, is driven by lack of concern? Well, that's all the indications I've been talking about. You told me what the prosecutor said, but the judge said quite a lot as to his reasoning, and I didn't see anything there that suggested that treatment programs had anything to do with his reasoning. Well, I would certainly go back to page 390, where the court says that I'm in prison. Well, let's look at the whole context. Defense counsel is saying, Mr. Kusada has lost it. He met with alcohol. He has an addiction. Then he says, quote, I don't know if prison will necessarily address someone who has an addiction, whether it is drugs or court interjections. It's harder to get there. It's harder to get alcohol there. Defense counsel says, that's not possible in court. I know, but it's a lot harder. Referring to him in prison again, and you can't arrest any children, and we can impose treatment, precise abuse treatment, and this is what I quoted before. That isn't their statement. The judge is saying, if he's in prison, that he can get the treatment that he needs. Is it improper for the judge to be mindful that death can happen without conditioning the sentence for the express purpose of imposing such treatment? The Supreme Court said it's not improper to be mindful. I'm going to read the two pages of it. As long as the sentence is not geared towards enabling it. And that's the tool we're wrestling with here, isn't it? It seems the judge's comments were at best ambiguous. And as my colleague pointed out, there's nothing about how long the drug program would take for the judge to allegedly tie those together so that he could get the drug treatment to which you make reference. When you look at all the circumstances, you change the disposition report, the extreme disproportionate variance above the guidelines range, the change that took place between the two levels of the hearing. I think the evidence is clear. My lords, everybody's here for a moment. Very good. We'll hear it in the outlet. The court takes the floor. I just want to say that I'm here for the District Attorney's trial. One of the things I asked the courts to look at in a particular phrase that counsel has referenced numerous times about what the jury's said about treatment in prison and the statement that the jury's made. And the other response would be, can it impose treatment? Well, the answer would fall into impose treatment in prison. He can suggest the programs, and he can link them to sentences and to the cases in order to do it. But he has no authority to impose it. Which he had on two prior occasions. And, again, they imposed it after the sentence was laid. So you're suggesting that the judge erred upon a different matter, which is that he thought he had the ability to impose the treatment, but he didn't? No, no, I'm suggesting that the word imposed meant that he was referencing that he can impose this in addition to supervision. And that he can impose it in prison. And, of course, now we have a recess. He's now brought up again. And the judge was fairly clear that he finds that he had to be in danger as he did in sentencing, as he did in the first violation, and as he did in this violation. And the record clearly supports the court's determination that he was a danger to the community. What's your response to the comment that my colleague, Judge Wallace, made about the standard of review here? There was no formal objection. So we review whatever occurred for plain error. Your opposing counsel suggests that there's case law that suggests what happened here was plain error. But given the totality of what happened, given the reasons that the judge gave for the sentence, was there plain error? Or are we, as they've said, on the issue that there's simply no plain error? Our position is there was no plain error. And in the analysis of the court, if it determines otherwise, it's sort of reasonable to think that the sentence would have been different going back to that court. And given the numerous, I think I said, at least six different statements by the court over the course of the sentencing, that it's a dangerous community, the government says that there's no value for them to change or to have changed the sentence. Because he was doing it as a danger and not as a treatment. Any other questions? We're nearly done. Thank you very much. Yes, I have some. Go ahead. I would doubt that opposing counsel has focused on the language of imposed treatment. And it's quite true in one of the rationales of Topia that one reason that it's not an appropriate Congress setting for it cannot impose treatment to compose a prison sentence to facilitate treatment is that the court, that Congress did not give judges the power to require someone to get treatment in prison. And Topia, with that in the result, did not get treatment as a sign of that. However, opposing counsel is ignoring what comes right after that part of the record where the judge says we can make the circumstances be a lot more conducive to actually participating in benefiting in sex offender treatment, clearly a reference to how he, when he was not in prison, was having trouble keeping up with the treatment. So making it more conducive means getting a longer sentence. Well, again, I assume you understand what we're wrestling with here is that vestiguity. But I'm not sure what the judge said. What's your, other than the language that you've already quoted, what is the best authority that you have for the proposition that the judge expressly conditioned the length of the sentence on your point of getting a correct treatment? Other than that one statement, I referred to the contextual factors. A sequence of what happened. First, the Dispo report that didn't say anything about it. Then these comments, the three statements by the prosecutor right before these comments say, put him in prison because he'll get treatment in prison. And the new Dispo report that specifically says, put him in prison so he'll get treatment in prison. And then the resumption where the prosecutor, again, says, if you put him in prison, he can get treatment in prison. Okay. Thank you very much. Thank you both for your argument. The case to this argument is submitted.
judges: Wallace, Clifton, M. Smith